IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| MERCHANT PAYMENT SOLUTIONS, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>WEST PAYMENTS, LLC, *et al.*,<br><br>Defendants. | Civil No. 23-00438 MWJS-WRP<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS FIRST AMENDED COMPLAINT AND DENYING AS MOOT DEFENDANTS' MOTIONS TO TRANSFER AND TO COMPEL ARBITRATION |

## **INTRODUCTION**

In three substantially similar motions, Defendants in this case move to dismiss the First Amended Complaint (the FAC) against them. They assert a lack of personal jurisdiction, improper venue, failure to state a plausible claim for relief, and failure to join an indispensable party. In the alternative, Defendants request that the Court transfer the case to another district or compel arbitration. Plaintiff Merchant Payment Solutions, LLC (Merchant) opposes the motions on all fronts.

Based on the papers submitted at this juncture, the Court finds it does not have personal jurisdiction over any of the Defendants except West Payments, LLC (West), FFS Data Corporation (FFS), and individual Ricky Beard. And even as to West, FFS, and Ricky Beard, the FAC does not adequately state any plausible claim for relief. The Court therefore DISMISSES the FAC in its entirety.

## BACKGROUND

### A.    The First Amended Complaint's Factual Allegations

Merchant brings this action against seven named defendants and ten unnamed "Doe" defendants.  Among the named parties are West (a Texas LLC) and FFS (a Texas corporation), against whom Merchant brings breach of contract claims for non-payment of residual income allegedly owed to Merchant.  The FAC also makes sweeping allegations that each defendant is an agent, parent, subsidiary, affiliate, and/or alter ego of the other, and that they were co-conspirators in a fraud carried out against Merchant, which culminated in the non-payment.  The other named defendants are Trio Technologies, LLC (Trio), a Nevada LLC; CML Management Services LLC (CML), a Texas LLC; and individuals Olan Beard, Ricky Beard, and Cynthia Lambert.

The parties are in the electronic payment processing industry.  In 2019, Merchant and West entered into a referral agreement (the West Agreement), under which Merchant "was authorized to refer prospective merchants to West to apply for credit card processing services"; if "a merchant application was approved by West and the merchant used West's credit card processing services," Merchant was entitled to residual payments.  ECF No. 13, at PageID.76 (¶ 33).  For a time, Merchant received residuals from West without incident.  But beginning in around November 2021, FFS made the payments—not West.  *Id.* at PageID.79 (¶ 44).

2

In January 2023, Merchant did not receive payment for December 2022 residuals, in the amount of $193,593.25. *Id.* at PageID.81 (¶ 56). At that time, Merchant became "confused" about an assignment of rights that had taken place under the contract "without notice." *Id.* (¶ 57). Merchant contacted Olan Beard, the owner of FFS, who informed Merchant about an "Asset Purchase Agreement" whereby another business had acquired FFS's merchant card processing business. *Id.* (¶¶ 55, 57). Olan Beard "deflected responsibility" for the December 2022 residuals to FFS's successor in interest.[1] *Id.* (¶ 57). To date, the December 2022 residuals remain unpaid. *Id.* at PageID.82 (¶ 63).

The FAC also mentions a second contract, executed by Merchant and FFS in 2020 (the FFS Agreement). Under that contract, FFS was to refer new banking partners to Merchant, not the other way around. *Id.* at PageID.75 (¶ 29). Moreover, the agreement related to FFS's automated clearing house (ACH) business, not its separate card processing services business. *Id.* (¶ 28). But the FAC alleges that the latter formed FFS Agreement "supersedes" the West Agreement and thereby controls this dispute. *Id.* at PageID.98 (¶ 159).

The two contracts include differing choice-of-law and forum selection clauses. The FFS Agreement includes a Hawaiʻi choice-of-law clause, *id.* at

---

[1] Although that "successor in interest" is unnamed in the FAC, the briefing and affidavits of both parties identify it as non-party the OLB Group, Inc. (OLB).

PageID.106 (¶ 18), and selects a Hawaiʻi state court as its forum, *id.* at PageID.108 (¶ 23).  The West Agreement, on the other hand, includes a Texas choice-of-law clause and selects Texas federal or state courts as its forum.  *Id.* at PageID.123 (¶ 26).  And the West Agreement includes an arbitration agreement for disputes of amounts greater than $5,000, governed by the Texas Arbitration Act.  *Id.* at PageID.124 (¶ 31).

The FAC acknowledges that on their face, the two contracts name separate entities and their officers.  *Id.* at PageID.79 (¶ 42).  But "[d]espite th[is] language," the FAC alleges, "there is no separation between" West and FFS, nor between any of the other Defendants.  *Id.* (¶ 43).  Merchant alleges that shortly after the non-payment of the December 2022 residuals, it "realized it had been deceived by Defendants and discovered West and FFS shared many relationships, including, among other things, shared employees and the same office building."  *Id.* at PageID.82 (¶ 60).  In particular, the FAC alleges that Olan and Ricky Beard are father and son; West and Trio share the same address for their principal places of business; West, Trio, and FFS all share the same office building; West and FFS share employees, including Defendant Lambert; Olan and Ricky Beard both hold interests in West, Trio, and FFS; and Ricky Beard uses an "@triopay.com" email address in communications on West's behalf.  *Id.* at PageID.77-78 (¶ 39).

In addition to the alter ego theory, the FAC alleges that Defendants should be liable for each other's actions because they conspired to not pay the December 2022 residuals. *Id.* at PageID.77 (¶ 38). The FAC alleges that, from the beginning, Defendants "conspired to pursue a relationship with [Merchant] with the intent to injure its reputation, undercut [Merchant] from its duly owed residual compensation, and deceive [Merchant] into thinking it would receive the full extent of the bargain" to which it contracted. *Id.* at PageID.80 (¶ 51). And the FAC further alleges that in carrying out the conspiracy, Defendants intentionally made "false representations regarding their business practices, including, among other things, West's and FFS's underwriting practices, their respective requirement to provide [Merchant] with notice before an assignment of rights, their history of timely payments to their agents, and the existence of West and FFS as separate entities." *Id.* (¶ 52).

Accordingly, the FAC alleges the following causes of action:

| Count | Theory of Liability | Defendants |
|-------|---------------------|------------|
| 1 | Breach of Contract | Against West and FFS |
| 2 | Breach of Duty of Good Faith and Fair Dealing | Against all Defendants |
| 3 | Breach of Fiduciary Duty | Against Ricky Beard and West |
| 4 | Participation in Breach of Fiduciary Duty | Against Trio, Olan Beard, FFS, CML, and Lambert |

5

| 5 | Civil Fraud/Deceit | Against all Defendants |
|---|---|---|
| 6 | Violations of Hawaiʻi Revised Statutes (HRS) § 480-2 (2009) | Against FFS, Trio, West, and CML |
| 7 | Conspiracy to Commit Conversion and Civil Theft | Against Olan Beard, FFS, Trio, CML, and Lambert |
| 8 | Conversion and Civil Theft | Against all Defendants |
| 9 | Tortious Interference with Prospective Economic Advantage | Against all Defendants |
| 10 | Constructive Trust and Request for Disgorgement | Against all Defendants |
| 11 | Money Had and Received | Against West and FFS |

*Id.* at PageID.82-96 (¶¶ 64-151).

### B.  Defendants' Motions to Dismiss

On January 16 and 29, 2024, Defendants filed three substantially similar motions to dismiss under Rule 12 of the Federal Rules of Civil Procedure.[2]  ECF Nos. 24, 25, & 27.  Defendants seek dismissal of the FAC under Rule 12(b)(2) (lack of personal jurisdiction), 12(b)(3) (improper venue), 12(b)(6) (failure to state a claim upon which relief can be granted), or 12(b)(7) (failure to join an

---

[2]   Defendants CML and Lambert jointly filed a motion to dismiss.  ECF No. 24.  West, Trio, and Olan and Ricky Beard jointly filed another motion to dismiss. ECF No. 25.  And Olan Beard (again) and FFS jointly filed the third.  ECF No. 27.

indispensable party); in the alternative, they seek transfer of the case to the Northern District of Texas or to compel arbitration.

In support of their motions, Defendants submit several declarations[3] that undercut certain allegations in the FAC related to personal jurisdiction, including the declarations of Ricky Beard, Olan Beard, and Lambert. *See* ECF Nos. 24-2, 25-12, & 25-17.  Ricky Beard, for one, declares as follows:  He is the owner of West and Trio.  ECF No. 25-12, at PageID.250 (¶ 1).  He resides in Texas and has never been to Hawaiʻi "for any business-related purposes." *Id.* (¶ 2).  Neither Ricky Beard, West, nor Trio have any assets, property, or bank accounts in Hawaiʻi, have an address in Hawaiʻi, or pay taxes in Hawaiʻi. *Id.* at PageID.251 (¶¶ 6, 9-10).  And neither West nor Trio have any offices, employees, or agents in Hawaiʻi. *Id.* (¶¶ 7-8).

Ricky Beard further avers that neither he nor Trio has ever done business with Merchant. *Id.* at PageID.252 (¶ 12).  Out of sheer convenience, Ricky uses

---

[3]     Merchant objects to a declaration submitted by Defendants' counsel, Michael Breslin. *See* ECF No. 25-2.  That declaration concerns filings in a related New York case, in which Merchant's CEO apparently admitted that OLB, not FFS or the other Defendants, owes Merchant the December 2022 residuals.  According to Breslin's declaration, Merchant—represented by the same counsel representing OLB in the New York case—is disingenuously suing Defendants instead.  To the extent that Merchant continues to advance these objections, *see* ECF No. 53 (deeming withdrawn Merchant's related motion regarding the disputed exhibits), the Court need not sift through them, as consideration of the Breslin declaration and its attached exhibits is not necessary to decide Defendants' motions.

his Trio email address for all personal and business communications.  *Id.*  Trio and West are not a subsidiary or parent of any of the other entity Defendants.  *Id.* at PageID.251 (¶ 4).  And Trio does no business with West.  *Id.* at PageID.252 (¶ 12).

Ricky Beard also explains West and FFS's relationship.  In 2019, FFS contracted with West to bring new merchants into its card processing services portfolio.  *Id.* (¶ 14).  Two years later, FFS sold its merchant card processing services business to non-party OLB.  *Id.* at PageID.254 (¶ 18).  In connection with that sale, West assigned all of its third-party sales referral agreements to FFS "so that FFS could assign them to OLB."[4]  *Id.*

Next, in two separate declarations, Olan Beard avers as follows:  He is the owner of FFS.  ECF No. 25-17, at PageID.292 (¶ 1); ECF No. 27-2, at PageID.369 (¶ 1).  He has only been to Hawai'i once in the 1990s, and has never contracted with Merchant in his personal capacity.  ECF No. 27-2, at PageID.369-70 (¶ 2).  Olan Beard and FFS do not have any property, offices, employees, or bank accounts in Hawai'i, pay any taxes in Hawai'i, or have a mailing address in Hawai'i.  *Id.* at PageID.370-71 (¶¶ 5-6, 8-9).  FFS also does not conduct any business in Hawai'i.  *Id.* at PageID.370 (¶¶ 4, 7).  In addition, FFS is not a subsidiary or parent of any of the remaining entity Defendants; Olan Beard and

---

[4]     Attached as an exhibit to Ricky Beard's declaration is a copy of a written contract between West and FFS making that assignment.  *See* ECF No. 25-16.

FFS have never held any interest in or employment with West, Trio, or CML; and Ricky Beard, West, Trio, and CML have never held any interest in or employment with FFS.  *Id.* at PageID.371 (¶ 10).

Olan Beard further declares that in 2020, FFS signed the FFS Agreement with Merchant, under which FFS could refer potential clients to Merchant for a commission.  ECF No. 25-17*,* at PageID.293 (¶ 3).  But that contract does not provide for any payments flowing to Merchant, and, in any case, no business was ever carried out under that contract.  *Id.* (¶¶ 3-4).  Consistent with Ricky Beard's declaration, Olan Beard asserts that FFS sold its merchant card processing business to non-party OLB in 2021.  *Id.* at PageID.293-94 (¶¶ 5-6).  In connection with that sale, OLB took over all the independent sales agreements related to FFS's card processing business.  *Id.* at PageID.294 (¶ 7).  Among them was the West Agreement, which West had assigned to FFS.  *Id.*  And Olan Beard alleges that after that sale, OLB was responsible for paying Merchant's monthly commissions, including the disputed December 2022 residuals.  *Id.* (¶ 8).

Finally, Lambert declares as follows:  She is the sole owner of CML.  ECF No. 24-2, at PageID.169 (¶ 1).  In addition to running CML, Lambert worked for FFS until 2021.  *Id.* at PageID.170-71 (¶¶ 11-12).  At that time, she transitioned from employment with FFS to non-party OLB as a part of OLB's acquisition of FFS's merchant card processing business.  *Id.* at PageID.171 (¶ 13).  Lambert

resides in Texas and has never set foot in Hawaiʻi.  *Id.* at PageID.169-70 (¶ 3).  Her

company CML is not a subsidiary or parent of any of the other entity Defendants,

and it does not conduct any business in Hawaiʻi or have any offices, employees, or

agents in Hawaiʻi.  *Id.* at PageID.170 (¶¶ 5, 7-8).  Additionally, neither Lambert

nor CML own any assets, property, or bank accounts in Hawaiʻi, have a mailing

address in Hawaiʻi, or pay taxes in Hawaiʻi.  *Id.* (¶¶ 6, 9-10).

In an omnibus brief, Merchant opposes Defendants' motions.  ECF No. 40.

Merchant attaches an opposing declaration from its CEO, Manuel Sanchez.  ECF

No. 42.  Among other things, Sanchez avers that Merchant received payments for

the residuals owed on the West Agreement from several of the Defendants:

directly from Ricky Beard between the contract's inception in 2019 and December

2021, *id.* at PageID.485 (¶ 13); from both Ricky Beard and FFS in December 2021,

*id.* (¶ 14); solely from FFS between January and December 2022, *id.*; and from an

OLB subsidiary from February 2023 forward,[5] *id.* at PageID.487 (¶ 21).  Sanchez

attaches several bank statements as exhibits.  *See* ECF Nos. 42-1 to 42-3, 42-5.

The Court elects to decide the motions without a hearing, as authorized by

Local Rule 7.1(c).

---

[5]     Merchant also submits a declaration from counsel Matthew D. Luciani, in
which he represents that he "personally reviewed" his client's bank records.  ECF
No. 41, at PageID.447 (¶ 11).  According to Luciani, before January 2022,
Merchant received payments for the residuals directly from Ricky Beard, and from
January to December 2022, Merchant received payments from FFS.  *Id.*

## <u>DISCUSSION</u>

**A.    The Court Has Personal Jurisdiction Over Defendants West, FFS, and Ricky Beard, but Not Trio, Olan Beard, CML, or Lambert**

The Court must first determine whether it has personal jurisdiction over Defendants.  And it concludes that, based on the papers submitted at this time, it has personal jurisdiction over Defendants West, FFS, and Ricky Beard, but not Trio, Olan Beard, CML, or Lambert.

**1.    Standards Governing Motions to Dismiss for Lack of Personal Jurisdiction**

Defendants have a constitutional due process right to not be "subject to the binding judgments of a forum with which [they] ha[ve] established no meaningful 'contacts, ties, or relations.'"  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).  A plaintiff that seeks to have a court assert personal jurisdiction over a defendant has "the burden of proving such jurisdiction," *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1177 (9th Cir. 2004), which they must meet "for each claim asserted against a defendant," *id.* at 1180.

A plaintiff might meet its burden by establishing general or specific jurisdiction.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984).  To establish general jurisdiction, a plaintiff must show either that a defendant is domiciled in the forum, or that the defendant's contacts with the

forum are so extensive that they are effectively "present" in that forum. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). To establish specific jurisdiction, a court must examine "the quality and nature of the defendant's contacts with the forum state in relation to the cause of action." *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987).

In addition to constitutional due process considerations, a plaintiff must also demonstrate a statutory basis for personal jurisdiction. *Yamashita v. LG Chem, Ltd.*, 48 F.4th 993, 998 (9th Cir. 2022). Where, as here, there is no federal statute governing personal jurisdiction, "the district court applies the law of the state in which it sits." *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608-09 (9th Cir. 2010). Because Hawaii's long-arm jurisdictional statute is coextensive with due process requirements, *Haw. Forest & Trail Ltd. v. Davey*, 556 F. Supp. 2d 1162, 1168 (D. Haw. 2008), the due process and state law analyses are the same.

To determine whether a plaintiff has met these legal requirements at the motion-to-dismiss stage, a court need not hold an evidentiary hearing to conclusively resolve whether personal jurisdiction exists. Instead, at this stage, a court may make a more qualified ruling based on the written submissions. When a court takes that latter route, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v.*

*Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011); *see also Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).  In determining whether a plaintiff has met this burden, "conflicts between the facts contained in the parties' affidavits must be resolved" in the plaintiff's favor.  *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (quoting *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)).  And if the plaintiff has not submitted an affidavit on a factual point, the Court must still accept the plaintiff's *allegations* as true so long as they are uncontroverted.  *Id.*

At the same time, even when the Court has chosen not to hold an evidentiary hearing, it need not credit a plaintiff's conclusory allegations.  *Television Events & Mktg., Inc. v. Amcon Distrib. Co.*, 416 F. Supp. 2d 948, 962-63 (D. Haw. 2006); *accord Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).  Moreover, if a plaintiff rests merely on allegations and the moving party contradicts those allegations with an affidavit, the Court need not accept the plaintiff's unsubstantiated allegations as true.  *Data Disc*, 557 F.2d at 1284.

      **2.**      **Merchant Has Made a Prima Facie Showing of Specific Jurisdiction as to West, FFS, and Ricky Beard, But Not as to Any Other Defendant**

No party has asked for an evidentiary hearing, and the Court concludes that one is not warranted at this early stage in the proceedings.  Instead, the Court

13

resolves Defendants' Rule 12(b)(2) motions on the papers and asks only whether Merchant has made a prima facie case of personal jurisdiction.

In its effort to meet that burden, Merchant first argues for general jurisdiction. This argument is clearly unpersuasive. None of the Defendants are domiciled in Hawai'i, nor do they have such extensive contacts with Hawai'i that they are effectively present here. The Defendants are all located in Texas and/or Nevada with minimal Hawai'i contacts. Indeed, at least one of the Defendants— Lambert—has never even been to Hawai'i. Merchant suggests that Defendants' "abuse of the corporate format is the type of intentional conduct that allows this Court to exercise [general] jurisdiction." ECF No. 40, at PageID.424. But to the extent that proposition is true under an alter ego theory—a Court may attribute a corporate entity's "contacts" to another entity or individual where that entity is the alter ego of the other, *see RAE Sys., Inc. v. TSA Sys., Ltd.*, No. C 04-2030, 2005 WL 1513124, at *3 (N.D. Cal. June 24, 2005)—the Court would still need to find that at least one of the Defendants is subject to the Court's general jurisdiction. That is not the case here.

Merchant also argues, in the alternative, that specific jurisdiction exists. This argument requires a more thorough discussion. Specific jurisdiction exists when a case "arises out of or relates to the defendant's contacts with the forum." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (cleaned up). "Due

process requires that a defendant who is not present in the forum has 'certain minimum contacts' with the forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020) (quoting *Int'l Shoe*, 326 U.S. at 316).  The Court must conduct a three-part inquiry to determine whether a nonresident defendant has sufficient "minimum contacts":

> (1)   the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum;
>
> (2)   the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3)   the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* (cleaned up).  "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  If both of those prongs are satisfied, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King*, 471 U.S. at 476-78).

The Court considers each of these three prongs in turn to assess whether Merchant has made a prima facie showing of specific jurisdiction.

//

//

### a.    Purposeful Availment of the Forum

The FAC alleges both contract and tort claims, and since this first prong depends on type of claim asserted, the Court considers each in turn.

The breach of contract claim is brought against West and FFS.  In considering whether personal jurisdiction exists for this claim, the Court must examine the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."  *Burger King*, 471 U.S. at 479.  The Court concludes that the FAC sufficiently alleges—for a prima facie case—that West and FFS purposefully availed themselves of the forum.  The FAC alleges that Defendants "were aware of the positive reputation and goodwill [Merchant] possessed *in Hawaii*," ECF No. 13, PageID.80 (¶ 50) (emphasis added), "desired to utilize [Merchant] as a conduit to grow their own business connections," and, as a result, pursued a relationship with Merchant through the parties' contracts, *id.* (¶ 51).  It further alleges that Merchant did refer a "broad range of merchants to West" under their contract.  *Id.* at PageID.81 (¶ 54).  And it alleges that the FFS Agreement included a Hawaiʻi choice-of-law provision and a Hawaiʻi state court forum selection clause.  *Id.* at PageID.98 (¶ 160); *see also id.* at PageID.108 (¶ 23).  The Court is therefore satisfied that, accepting the FAC's factual allegations as true, West and FFS purposefully availed themselves of the privileges of conducting activities in the forum by contracting with Merchant.

The FAC separately advances tort claims against all Defendants.  For tort claims, purposeful availment is measured by an "effects" test that is met "if the defendant is alleged to have 1) committed an intentional act; 2) expressly aimed at the forum state; and 3) causing harm that the defendant knows is likely to be suffered in the forum state." *Television Events*, 416 F. Supp. 2d at 959 (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

Here, the FAC's allegations satisfy the "effects" test as to West and FFS. Both Defendants had direct business relationships with Merchant.  And the FAC alleges that (1) they engaged in intentional conduct, (2) which was expressly aimed at Merchant and taking advantage of Merchant's contacts in Hawai'i, and (3) which caused financial harm that Defendants knew was likely to be suffered by Merchant in Hawai'i.

As to the other Defendants, however—Trio, Ricky and Olan Beard, CML, and Lambert—the FAC alleges that each of the Defendants was an alter ego and co-conspirator of the other; that Defendants conspired to pursue a relationship with Merchant through the parties' contracts; that they did so "with the intent to injure [Merchant's] reputation, undercut [Merchant] from its duly owed residual compensation, and deceive [Merchant] into thinking it would receive the full extent of the bargain to which it intended to contract into," ECF No. 13, at PageID.80 (¶ 51); that Defendants made intentional misrepresentations to

Merchant; and that Defendants thereby caused Merchant damages.  Put differently, as to these other Defendants, the FAC's purposeful availment allegations are based entirely on its assertions that these Defendants acted as alter egos of, and in a conspiracy with, Defendants West and FFS.[6]  The question, therefore, is whether the FAC has adequately alleged these theories of liability.

 Consider first Merchant's alter ego theory.  Merchant relies on this theory because, "if a corporation is the alter ego of an individual defendant, or one corporation the alter ego of another, the Court may 'pierce the corporate veil' jurisdictionally and attribute 'contacts' accordingly."  *RAE Sys.*, 2005 WL 1513124, at *3.  Moreover, "[t]he standard for personal jurisdiction under an alter ego theory is lower than the standard for liability under an alter ego theory."  *Television Events*, 416 F. Supp. 2d at 962.  Merchant need only make a prima facie showing of an alter ego relationship.  *See Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1193 (9th Cir. 1984).

To determine whether one corporate entity is an alter ego of another entity or individual for the purposes of personal jurisdiction, courts consider a number of

---

[6]     No party disagrees that "federal courts exercising diversity jurisdiction must follow state substantive law . . . when adjudicating state law claims."  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 (9th Cir. 2020).  But the parties disagree over which state's law should govern.  Defendants argue that Texas law governs.  Merchant asserts that Hawaiʻi law governs.  The Court need not resolve this dispute because, as explained below, the results are the same under either Hawaiʻi or Texas law.

factors.  A corporate entity is generally deemed an alter ego of another entity if

"there is such unity of interest and ownership that the separate personalities of the

two entities no longer exist," and "failure to disregard their separate identities

would result in fraud or injustice." *Ranza*, 793 F.3d at 1073 (cleaned up); *accord*

*TMX Fin. Holdings, Inc. v. Wellshire Fin. Servs., LLC*, 515 S.W.3d 1, 8 (Tex. Ct.

App. 2016).  Under Hawaiʻi law, the most important factors are

> 1) commingling or failing to separate funds; 2) the failure to
> adequately capitalize a corporation; 3) the total absence of corporate
> assets, and undercapitalization; 4) the use of a corporation as a mere
> shell, instrumentality or conduit for a single venture or the business of
> an individual or another corporation; 5) the concealment and
> misrepresentation of the identity of the responsible ownership,
> management and financial interest; 6) the disregard of legal
> formalities and the failure to maintain arm's length relationships
> among the related entities; 7) the formation and use of a corporation to
> transfer to it the existing liability of another person or entity; and 8)
> the parent's financing of the subsidiary.

*Television Events*, 416 F. Supp. 2d at 963 (cleaned up).  Other relevant factors

include, but are not limited to, the "identity of directors and officers of the two

entities"; "the use of the same office or business location"; "the employment of the

same employees and/or attorney"; and "the contracting with another with intent to

avoid performance by use of a corporate entity as a shield against personal

liability." *Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co.*, 91 Hawaiʻi

224, 242, 982 P.2d 853, 871 (1999) (cleaned up).

19

As to the relationship between corporate entities and individuals, Texas courts "look to the total dealings of the corporation and the individual, including the degree to which corporate and individual property have been kept separate, the amount of financial interest, ownership, and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Wilmington Tr., Nat'l Ass'n v. Hsin-Chi-Su*, 573 S.W.3d 845, 855 (Tex. Ct. App. 2018) (cleaned up).  And Texas courts have specifically identified "the following as evidence of alter ego status:  payment of alleged corporate debt with personal checks or other commingling of funds, representations that the individual will back the corporation financially, the diversion of corporate profits for personal use, and inadequate capitalization." *Id.*

Here, the FAC makes a collective, conclusory allegation that all Defendants are alter egos of one another.  *See, e.g.*, ECF No. 13, at PageID.70 (¶ 10) ("[E]ach of the Defendants . . . was the agent, servant, employee, partner, joint venturer, representative, subsidiary, parent, affiliate, alter ego, or co-conspirator of the others . . . .").  But conclusory allegations do not suffice to make out a prima facie case. *Television Events*, 416 F. Supp. 2d at 963.  The Court therefore must consider the sufficiency of Merchant's specific allegations as to each relationship.

20

Starting with entity Defendants West, FFS, and Trio, the FAC does allege a few particulars:  that Ricky Beard owns West and Trio; Olan Beard owns FFS;[7] Olan and Ricky Beard are father and son; West and Trio use the same address as their principal place of business; West, FFS, and Trio are all located in the same office building; West and FFS share certain employees, including Lambert; Ricky Beard uses an "@triopay.com" email address in communications on West's behalf, ECF No. 13, at PageID.77-78 (¶ 39); and FFS paid Merchant for residuals due on West's contract with Merchant from around November 2021 to December 2022.

These allegations—accepted as true at this stage—are sufficient to make a prima facie showing of an alter ego relationship between West and FFS.  Not only are those entities located in the same office building and are owned by father and son, but there is evidence of financial commingling whereby FFS paid Merchant for the residuals due on West's contract with Merchant for over a year.  The affidavits submitted by Defendants aver that West is not a parent or subsidiary of any other entity Defendant, but they do not otherwise explain why FFS (allegedly) paid those residuals.

---

[7]     To the extent that the FAC alleges that Olan and Ricky Beard both have interests in all three entities—West, FFS, and Trio—that allegation is not entitled to a presumption of truth because it is contradicted by Ricky and Olan Beard's affidavits.  *See* ECF Nos. 25-12 & 25-17; *see also Data Disc*, 557 F.2d at 1284.

Standing alone, however, these allegations are insufficient to show a prima facie alter ego relationship between Trio and either FFS or West.  The uncontroverted declarations of Ricky and Olan Beard represent that West, FFS, and Trio are not parents or subsidiaries of each other.  And more importantly, there is no evidence of commingling of funds, or of other disregard for lack of formalities between Trio and either West or FFS.  Ricky Beard's mere ownership of both West and Trio, and his use of the Trio email address in communications on West's behalf, are not sufficient to show an alter ego relationship between West and Trio. *See Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997) ("Common ownership alone is insufficient to support disregard of the corporate form.").  And the record is even more attenuated as between FFS and Trio, which appear to have no relationship other than respective ownership by a father and son and being located in the same office building.

Turn now to individual Defendants Ricky and Olan Beard.  Aside from Ricky and Olan Beard's familial relationship and respective ownership interests— Ricky Beard's in West and Olan Beard's in FFS—the FAC's allegations are largely conclusory:  it alleges that each individual Defendant "commingled funds"; "used funds for something other than corporate purposes"; "work[ed] through each other during the negotiations and performance, and interpretation, of the contracts"; and "treated the assets of each other as their own."  ECF No. 13, at

PageID.70-71 (¶ 11).  For Ricky Beard, Merchant did produce an affidavit from its CEO representing that Ricky Beard personally paid Merchant on behalf of West for residuals due on the West Agreement from its inception through December 2021.  ECF No. 42, at PageID.485 (¶ 13).  In light of that affidavit, the Court concludes that Merchant made a sufficient prima facie showing of a possible alter ego relationship between Ricky Beard and West.

As to Olan Beard, however, the record lacks the touchstone indicators of commingling of personal funds or purposes with corporate assets, or atypical control over any of the entities.  Merchant does not provide any factual allegations or evidence to support its conclusory allegations of an alter ego relationship between Olan Beard and FFS and/or West and, therefore, fails to make a prima facie showing.  *See Del Castillo v. PMI Holdings N. Am. Inc.*, No. 14-CV-03435, 2016 WL 3745953, at *12 (S.D. Tex. July 13, 2016) ("[M]erely recit[ing] the factors which courts consider in determining whether to pierce the corporate veil without providing even a modicum of specific facts is insufficient to establish alter ego for purposes of personal jurisdiction[.]" (cleaned up)); *Wilmington Tr.*, 573 S.W.3d at 855-58 (rejecting an alter ego theory where one individual owned all of an entity's stock and that entity shared office space with affiliated entities owned by the individual's family members, where the record lacked evidence that the

23

owner "actually exercised atypical control over the day-to-day internal operations").

Lambert and her company CML are even farther removed. For those Defendants, the only facts supporting an alter ego relationship between them and West and/or FFS are that Lambert is the owner of CML, was a shared employee of CML and FFS, and sent emails from her FFS email address with her CML signature line. ECF No. 13, at PageID.90-92 (¶¶ 115, 121). Not even the few factors present for the other entity Defendants are present for CML: CML does not share an owner with the other entities, and it has a different business address. In addition, Lambert submitted an uncontroverted declaration stating that CML is not a subsidiary or parent of any of the Defendants. ECF No. 24-2, at PageID.170 (¶ 5). And as with Olan Beard, there are no facts to support the FAC's conclusory allegations that Lambert commingled her property with and/or exercised control over West and/or FFS.

For the foregoing reasons, the Court finds that Merchant has not made a prima facie showing of an alter ego relationship between any of the Defendants except between West and FFS, and between Ricky Beard and West.

The Court now considers whether the conspiracy allegation is sufficient to attribute the contacts of West and/or FFS—who independently have minimum contacts with the forum—to remaining Defendants Trio, Olan Beard, Lambert, or

CML.  It is unclear whether a court may exercise personal jurisdiction over a defendant based on the conspiracy theory of jurisdiction, for the Ninth Circuit has not expressly accepted or rejected it.  *See, e.g.*, *In re W. States Wholesale Nat. Gas Litig.*, 605 F. Supp. 2d 1118, 1138 (D. Nev. 2009); *Du Pont v. Prudential Ins. Co.*, No. CV 18-9638, 2019 WL 4417494, at *8 (C.D. Cal. May 29, 2019).  But even accepting that theory as viable, the FAC is insufficient, for a plaintiff "must plead with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy."  *Du Pont*, 2019 WL 4417494, at *8 (quoting *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir. 1997)).  Here, the only allegations of conspiracy are conclusory.  *See, e.g.*, ECF No. 13, at PageID.77 (¶ 38) ("Defendants, and each of them, acted as a single conspiratorial unit such that each should be individually liable for the acts and omissions of each other, and that each should be subject to equitable relief for the same.").  The FAC does allege that Ricky Beard and West "withheld money" from Merchant "at the direction of and benefit to" the other named Defendants.  *Id.* at PageID.93 (¶ 128).  But it does not allege any facts that show how the other Defendants directed, or benefitted from, the conspiracy.

Because Merchant has not made a prima facie showing of minimum contacts for Defendants other than West, FFS, and Ricky Beard, the Court DISMISSES Trio, Olan Beard, CML, and Lambert for lack of personal jurisdiction.

25

### b.      Relationship of Claims to Forum-Related Activities

Merchant has made a sufficient prima facie showing on the first prong as to

Defendants West, FFS, and Ricky Beard, and the Court therefore considers the

second prong as to these Defendants.  Under that prong, a claim must arise out of

or relate to the defendant's forum-related activities.  *AMA Multimedia*, 970 F.3d at

1208.  Here, Merchant's claims against West arise out of West contracting with

Merchant, a Hawai'i entity.  To the extent FFS and Ricky Beard may be alter egos

of West, West's contacts may be attributed to them.  And the FAC also alleges that

its claims against FFS arise out of the FFS Agreement.  Accordingly, Merchant has

made a sufficient prima facie showing on the second prong.

### c.      Considerations of Reasonableness

Given that Merchant has satisfied the first and second prongs of specific

jurisdiction as to Defendants West, FFS, and Ricky Beard, the burden shifts to

those Defendants "to 'present a compelling case' that the exercise of jurisdiction

would not be reasonable."  *Television Events*, 416 F. Supp. 2d at 965 (quoting

*Schwarzenegger*, 374 F.3d at 801-02).  The Court "may exercise jurisdiction 'with

a lesser showing of minimum contacts than would otherwise be required if

considerations of reasonableness dictate.'"  *Id.* (quoting *Haisten v. Grass Valley*

*Med. Reimb. Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986)).  Those

considerations include:  (1) the extent of the defendants' purposeful interjection

into the forum state's affairs; (2) the burden on the defendant of defending in the

forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4)

the forum state's interest in adjudicating the dispute; (5) the most efficient judicial

resolution of the controversy; (6) the forum's importance to the plaintiff's interest

in convenient and effective relief; and (7) the existence of an alternative forum.

*Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993).

     In this case, the burden on Defendants West, FFS, and Ricky Beard—all of

whom are located in Texas—of defending in this forum would be material.

Moreover, there appears to be an alternative forum, and many of the parties and

witnesses are located in Texas.  On the other side of the coin, however, Defendants

are alleged to have engaged in long-term, intentional business in Hawaiʻi.

Additionally, Hawaiʻi "has a strong interest in remedying local harms related to

corporate misconduct."  *City & County of Honolulu v. Sunoco*, 153 Hawaiʻi 326,

347, 537 P.3d 1173, 1194 (2023).  And Defendants do not advance any compelling

counterarguments.  Therefore, at least at this early stage in the proceedings, the

Court does not find that Defendants West, FFS, and/or Ricky Beard have made a

compelling case that it would be unreasonable to exercise jurisdiction over them.

     Here is the upshot:  Based on the papers before the Court at this time, the

Court concludes that Merchant has made a prima facie showing of personal

jurisdiction over Defendants West, FFS, and Ricky Beard, but not over any other

Defendant. The Court therefore DENIES Defendants' Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction as to Defendants West, FFS, and Ricky Beard,[8] but GRANTS the motions as to Defendants Trio, Olan Beard, CML, and Lambert.

### B.     The FAC's Allegations Are Not Sufficient to Raise Any Plausible Entitlement to Relief

Defendants separately move for dismissal under Rule 12(b)(6), on the ground that the FAC fails "to state a claim upon which relief can be granted." Fed. R. Civ. Pro. 12(b)(6).  In considering this motion, the Court must assess whether the FAC's factual allegations are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014).  In so doing, the Court must "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Eclectic Props.*, 751 F.3d at 996 (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  The Court considers each of the FAC's claims in turn.

---

[8]     This ruling does not preclude any Defendant from again contesting personal jurisdiction at a later time, assuming Merchant chooses to file an amended complaint and the case then proceeds. *See RAE*, 2005 WL 1513124, at *4 n.1 ("When a court denies a Rule 12(b)(2) motion because a prima facie case has been shown, the movant can nevertheless continue to contest personal jurisdiction, either at a pretrial evidentiary hearing or at the trial itself.").

1.  The first cause of action asserted is breach of contract against West and FFS.  Under Hawaiʻi state law, to prevail on a breach of contract claim, "a party must prove:  (1) the contract at issue; (2) the parties to the contract; (3) whether Plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by Defendants; and (5) when and how Defendants allegedly breached the contract."  *Evergreen Eng'g, Inc. v. Green Energy Team LLC*, 884 F. Supp. 2d 1049, 1059 (D. Haw. 2012) (internal quotation marks omitted); *see also Coim USA Inc. v. Sjobrand Inc.*, 663 F. Supp. 3d 684, 687-88 (N.D. Tex. 2023) (listing similar elements under Texas state law).

Here, the FAC alleges—and Merchant submits copies of—two contracts, one between West and Merchant, and one between FFS and Merchant.  The FAC alleges that Defendants violated the West Agreement by failing to pay the December 2022 residuals.  ECF No. 13, at PageID.79-81 (¶¶ 48-49, 56).  The FAC also alleges, however, that the FFS Agreement "supersedes" the West Agreement. *Id.* at PageID.98 (¶ 159).  And there is no provision in the FFS Agreement that applies to the alleged non-payment of the December 2022 residuals.[9]  Indeed, the FAC acknowledges that the FFS Agreement contemplates FFS making referrals to

---

[9]     The Court may consider the contents of both the West and FFS Agreements in deciding the 12(b)(6) motion because they are attached to the FAC.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Merchant, not the other way around.  *Id.* at PageID.75 (¶ 29) ("Pursuant to the FFS

Agreement, FFS introduced [Merchant] to 'new Banking Partners for [Merchant]

to process ACH, E-checks, Pre-paid, and Debit card Transactions for Installment

Lenders.'").

Moreover, the FAC also acknowledges that *before* the accrual of the

disputed December 2022 residuals, FFS entered into an Asset Purchase Agreement

with a third party to which Merchant's clients were "subject."  *Id.* at PageID.81

(¶ 55).  And the FAC provides no factual allegations that would support a theory

that West would still be liable to Merchant for the residuals accrued *after* that sale.

Therefore, the FAC does not plausibly allege a breach by West or FFS.[10]

For those reasons, the breach of contract claim is DISMISSED as to all

Defendants.

2.  The Court turns next to the tort claims.  The FAC alleges a cause of

action for breach of duty of good faith and fair dealing against all Defendants.

Hawaiʻi law recognizes that "every contract contains an implied covenant of good

---

[10]      To the extent that in its opposition, Merchant also asserts that West breached
the contract by not notifying Merchant of its assignment to FFS within sixty days,
the Court agrees with Defendants that the FAC fails to state a claim for relief for
two reasons:  (1) that theory was not alleged in the FAC, *see Schneider v. Cal.
Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the
propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint
to a plaintiff's moving papers, such as a memorandum in opposition to a
defendant's motion to dismiss."); and (2) it does not sufficiently allege how that
breach caused Merchant's damages.

faith and fair dealing that neither party will do anything that will deprive the other of the benefits of the agreement." *Best Place, Inc. v. Penn Am. Ins. Co.*, 82 Hawaiʻi 120, 123-24, 920 P.2d 334, 337-38 (1996).  But a *cause of action* for bad faith only exists in specific circumstances, which do not exist here.  *See id.*; *DeRosa v. Ass'n of Apartment Owners*, 185 F. Supp. 3d 1247, 1252 (D. Haw. 2016) (acknowledging that a cause of action for bad faith exists in the insurance context and where the parties have a special relationship).  And Texas law does not recognize a cause of action for good faith and fair dealing at all.  *See English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983).  For that reason, the claim for good faith and fair dealing is DISMISSED as to all Defendants.

3.  The FAC also alleges a breach of fiduciary duty claim against West and Ricky Beard.  And it separately alleges the related claim of participation in breach of fiduciary duty against Trio, Olan Beard, FFS, CML, and Lambert.  As with the other claims, the Court considers—and rejects—the plausibility of those claims as to West, Ricky Beard, and FFS, over whom it may exercise personal jurisdiction.

A breach of fiduciary duty requires, of course, the existence of a fiduciary duty.  *Aquilina v. Certain Underwriters at Lloyd's Syndicate #2003*, 407 F. Supp. 3d 1016, 1048 (D. Haw. 2019); *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007).  And the Court agrees with Defendants that accepting as true the non-conclusory factual allegations in the FAC, no such duty exists here.

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017) (quoting Restatement (Third) of Agency § 1.01 (Am. Law Inst. 2006)); *accord Davis-Lynch, Inc. v. Asgard Tech., LLC*, 472 S.W.3d 50, 60 (Tex. Ct. App. 2015). There are no factual allegations that Merchant manifested assent to acting under Defendants' control or vice versa. Indeed, the express terms of the contracts state that the relationships created are that of independent contractor, and that Merchant has no authority to sign any contract or incur any other obligation on behalf of West. *See* ECF No. 13, at PageID.103 (¶ 3); *id.* at PageID.123 (¶ 27).

The FAC makes a conclusory allegation that Ricky Beard and West owed Merchant fiduciary duties because of "their status as principals in an agency relationship" with Merchant. *Id.* at PageID.85 (¶ 79). It further alleges that Ricky Beard and West "accepted a fiduciary role" in its contractual relationship with Merchant "to disclose all material facts." *Id.* at PageID.87 (¶ 92). But these are conclusory allegations not entitled to a presumption of truth under *Twombly* and *Iqbal*. And none of the other factual allegations in the FAC sufficiently establish

that Defendants owed Merchant fiduciary duties.  Therefore, the FAC fails to state a plausible claim for relief for breach of fiduciary duty.

In addition, there can be no cause of action for participation in breach of fiduciary duty without a breach of fiduciary duty.  *See, e.g.*, *Straehla v. AL Glob. Servs., LLC*, 619 S.W.3d 795, 804 (Tex. Ct. App. 2020) ("Knowing participation in breach of fiduciary duty is a derivative claim, requiring an underlying breach of fiduciary duty, in which the defendant knowingly participates.").  For those reasons, the breach of fiduciary duty and participation in breach of fiduciary duty claims are DISMISSED as to all Defendants.

4.  The FAC further alleges civil fraud/deceit against all Defendants.  That claim, too, is deficient, for it does not satisfy the heightened pleading standard that applies to fraud allegations.

Rule 9 of the Federal Rules of Civil Procedure requires that allegations of fraud "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The pleading must provide an "account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks omitted).  "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend

33

against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks omitted).  Defendants have not met these requirements here.

To be sure, the FAC alleges that Defendants made misleading statements. And it specifically alleges that Olan and Ricky Beard made misrepresentations regarding "West's and FFS's underwriting policies, the existence of West, FFS, and Trio as separate entities, the existence of [Olan Beard]'s separate duties to FFS, the existence of [Ricky Beard]'s separate duties to Trio, and the existence of [Ricky Beard]'s separate duties to West, as well as the existence of [Merchant]'s separate duties under the separate" agreements.  ECF No. 13, at PageID.89 (¶ 108); *see also id.* at PageID.80 (¶ 52).  But it does not allege what those statements were, let alone when, where, or to whom they were made.  Therefore, these allegations are insufficient to state a claim under Rule 9.  For that reason, the civil fraud/deceit claim is DISMISSED as to all Defendants.

5.  The FAC asserts violations of a Hawaiʻi state law prohibiting unfair competition and unfair or deceptive business practices, HRS § 480-2, against FFS, Trio, West, and CML.  Even if Hawaiʻi law applies to this dispute, the FAC fails to state a claim for violation of HRS § 480-2.

Hawaiʻi Revised Statutes § 480-2 makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or

commerce." HRS § 480-2(a). And it creates a private cause of action—that any person may bring—for unfair methods of competition. *See id.* § 480-2(e). But only a "consumer, the attorney general or the director of the office of consumer protection" has standing to bring an action for unfair or deceptive acts or practices. *Id.* § 480-2(d). Merchant is none of those, and therefore has no standing to bring a cause of action for unfair or deceptive acts or practices.

Merchant nonetheless maintains that it has standing, emphasizing that the legislative purpose of HRS § 480-2 is "to prevent deceptive practices *by businesses* that are injurious to *other businesses* and consumers." ECF No. 40, at PageID.437 (quoting *Goran Pleho, LLC v. Lacy*, 144 Hawai'i 224, 244, 439 P.3d 176, 196 (2019)). But Merchant ignores that the plain language of the statute differentiates between causes of action for unfair competition—which other businesses may bring—and for unfair or deceptive acts or practices—which only enumerated individuals (such as consumers) may bring.

As to unfair competition, the Court agrees that Merchant has standing. But the FAC's only relevant allegations amount to legal conclusions that must be disregarded under *Twombly* and *Iqbal*. *See, e.g.*, ECF No. 13, at PageID.89 ("Defendants [Olan Beard], FFS, [Ricky Beard], Trio, and West violated H.R.S. § 480-1 [sic] through acts of unfair methods of competition and unfair or deceptive

acts or practices in the conduct of their trade or commerce.").  For that reason, the HRS § 480-2 claim is DISMISSED as to all Defendants.

6.  As noted above, the FAC also advances a conspiracy claim:  conspiracy to commit conversion and civil theft against Olan Beard, FFS, Trio, CML, and Lambert.  And it separately alleges the underlying tort of conversion and civil theft against all Defendants.  Both of those theories fail under 12(b)(6).

Defendants argue that the economic loss doctrine bars both of these claims because Merchant seeks only the unpaid residuals, which are covered by contract.  "The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy."  *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014); *see also Ass'n of Apartment Owners of Newton Meadows ex rel. Its Bd. of Dirs.*, 115 Hawaiʻi 232, 285, 167 P.3d 225, 278 (2007).  Merchant, for its part, rejoins that the economic loss doctrine does not bar conspiracy claims.  As for the conversion claim, the Court agrees with Defendants that it seeks purely economic damages resulting from Defendants' alleged failure to pay under the contract, and is therefore barred.  Moreover, as to the conspiracy claim, as explained above, the FAC does not provide factual allegations—aside from conclusory statements—sufficient to state a claim for relief under the heightened pleading standard of Rule 9(b).  *See*

*Menashe v. Bank of N.Y.*, 850 F. Supp. 2d 1120, 1138 (D. Haw. 2012).  Therefore, the civil theft and conversion and conspiracy to commit civil theft and conversion claims are DISMISSED as to all Defendants.

7.   Next, the FAC asserts a claim for tortious interference with prospective economic advantage against all Defendants.  That claim, too, fails to state a plausible claim for relief.

The elements of tortious interference are:

(1) the existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to the plaintiff; (2) knowledge of the relationship, advantage, or expectancy by the defendant; (3) a purposeful intent to interfere with the relationship, advantage, or expectancy; (4) legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy; and (5) actual damages.

*Robert's Haw. Sch. Bus*, 91 Hawai'i at 258, 982 P.2d at 887 (cleaned up); *accord Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).  The FAC's allegations on these elements are too conclusory to be entitled to the presumption of truth.  *See, e.g.*, ECF No. 13, at PageID.94 (¶ 139) ("[B]y . . . conduct alleged in this complaint, including, among other things, misrepresenting the quality of their underwriting policies, Defendants . . . interfere[d] with and impair[ed] [Merchant's business relationships and/or prospective business advantages and/or prospective business expectancies]."); *id.* at PageID.95 (¶ 141)

("Each Defendants' interference caused the third parties to fail to consummate the prospective business relationships with [Merchant].").

Merchant rejoins that it adequately identified existing business relationships, including, in particular, tribal lending services. *See, e.g.*, *id.* at PageID.76 (¶ 32) ("While working with FFS, [Merchant] was a high-performing agent and boarded several approved Merchants with high sales volume with West, including but not limited to Tribal and Non-Tribal Lenders, as well as Conyi and Greenbox POS/QuickCard."). Even assuming so, the FAC does not allege—at least in more than a conclusory manner—that Defendants' actions caused an impairment of those relationships.[11] For that reason, the tortious interference with prospective economic advantage claim is DISMISSED as to all Defendants.

8. The FAC further asserts a constructive trust and request for disgorgement claim against all Defendants. A constructive trust is not a freestanding substantive claim, but a remedy. *See, e.g.*, *Menashe*, 850 F. Supp. 2d at 1144; *Lund v. Albrecht*, 936 F.2d 459, 464 (9th Cir. 1991); *In re Haber Oil Co.*, 12 F.3d 426, 436 (5th Cir. 1994). The same is true of disgorgement. *See, e.g.*, *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 873 (Tex. 2010). Because equitable

---

[11]    The Court does not take into consideration any "complaints" from tribes raised for the first time in Merchant's opposition. *See* ECF No. 40, at PageID.439; *Schneider*, 151 F.3d at 1197 n.1.

remedies are not independent causes of action, those claims are DISMISSED as to all Defendants.

9.  Finally, the FAC asserts a claim for "money had and received" against West and FFS.  Money had and received is an equitable claim.  *See, e.g.*, *GRCDallasHomes LLC v. Caldwell*, 619 S.W.3d 301, 308 (Tex. Ct. App. 2021). "When a written contract unambiguously covers the subject matter of the parties' dispute . . . the express-contract rule bars recovery in [equity] as a matter of law." *Id.* (cleaned up); *see also Balboa v. Haw. Care & Cleaning*, 105 F. Supp. 3d 1165, 1174 (D. Haw. 2015).  Here, the written contract with West unambiguously covers payment of residuals from referrals, the nonpayment of which is the dispute here. *See* ECF No. 13, at PageID.96 (¶ 150) ("West and FFS have possession or control of [Merchant's] [r]esiduals.").  Hence, the express-contract rule bars recovery in equity.  The money had and received claim is DISMISSED as to all Defendants.

To recap:  the Court does not have personal jurisdiction over Trio, Olan Beard, CML, or Lambert.  And while Merchant has made a prima facie showing of this Court's personal jurisdiction over West, FFS, and Ricky Beard, the FAC fails to state a claim upon which relief could be granted as to these Defendants.  For all of these reasons, the FAC falls short.  And because the Court dismisses the FAC on the aforementioned grounds, the Court DENIES the remaining motions as moot.

## C.    Leave to Amend

Although the complaint does not plausibly allege a claim for relief in its current form, the Court recognizes that Merchant could possibly cure some of the deficiencies by submitting an amended complaint.  Accordingly, the Court GRANTS Merchant leave to amend.  *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

The Court must emphasize one important consideration, however. Defendants argue that some of Merchant's factual allegations in the FAC are plainly contradicted by documents that were produced in New York litigation involving OLB—documents which originated from Merchant's CEO himself.  *See supra* note 3.  The Court has not relied on those documents in ruling on these motions, and has had no occasion to resolve whether those documents do in fact contradict Merchant's factual contentions.  The Court also recognizes that Merchant has previously argued that the documents are privileged and should not be considered.  But whether the documents are privileged or not, Merchant's counsel have them.  And Merchant's counsel, as officers of this Court, have a duty to make factual allegations only to the extent they "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(3). Merchant's counsel must heed that duty in considering whether to refile.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Court:

(1) GRANTS IN PART AND DENIES IN PART Defendants' motions to dismiss for lack of personal jurisdiction, namely, it GRANTS the motions as to Defendants Trio, Olan Beard, CML, and Lambert; and DENIES the motions as to Defendants West, FFS, and Ricky Beard;

(2) GRANTS IN PART AND DENIES IN PART Defendants' motions to dismiss for failure to state a claim for relief, namely, it GRANTS the motions as to Defendants West, FFS, Ricky Beard, and Doe Defendants; and DENIES the motions as moot as to Defendants Trio, Olan Beard, CML, and Lambert; and

(3) DENIES as moot Defendants' motions to dismiss for improper venue; to dismiss for failure to join an indispensable party; to transfer the case to the Northern District of Texas; and to compel arbitration.

If Merchant elects to file an amended complaint, it must comply with the following requirements:

(1)    Merchant's deadline to file an amended complaint is June 21, 2024;

(2)    Merchant's amended complaint should be titled "Second Amended Complaint"; and

(3)    Merchant must cure the deficiencies identified above.

Merchant is cautioned that failure to timely file an amended complaint that

conforms with this Order will result in automatic dismissal of this action, and that

failure to address the deficiencies identified in this Order may result in the

dismissal of a Second Amended Complaint with prejudice.

IT IS SO ORDERED.

DATED:  May 22, 2024, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith

_____
Micah W.J. Smith
United States District Judge

Civil No. 23-00438 MWJS-WRP, *Merchant Payment Solutions, LLC v. West Payments LLC* et al.; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS FIRST AMENDED COMPLAINT AND DENYING AS MOOT DEFENDANTS' MOTIONS TO TRANSFER AND TO COMPEL ARBITRATION

42